**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RICHARD SNIPES, | : | |
| | : | Civil Action No. 04-1949(WHW) |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| STATE OF NEW JERSEY, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Richard Snipes, Pro Se
#000378826B
Northern State Prison
168 Frontage Road
Newark, NJ 07114

Lucille M. Rosano
Special Deputy Attorney
Acting Assistant Prosecutor
Essex County Prosecutor's Office
Essex County Courts Building
Newark, NJ 07102
Attorney for Respondent

**WALLS**, District Judge

     Petitioner, Richard Snipes, filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. Respondent has filed an Answer. The Court has considered all submissions. For the reasons set forth below, the Petition will be DENIED.

**BACKGROUND**

1.   Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation:

> On February 22, 1999, at about 8:00 a.m., Joan Bogar, a teacher in East Orange, drove her 1990 burgundy Toyota Tercel to the public library to return books on her way to work. As she parked her car, she noticed a man walking down the street in her direction. Bogar removed her keys from the ignition and walked to the passenger side of the car to get her books. As she reached inside, she was shoved to the ground and her car keys were snatched. The perpetrator jumped into the car and drove off as Bogar yelled for help.
>
> After the police responded, Bogar was taken to Orange police headquarters. She gave a description of her assailant as a black man about 5'9" tall, 160 pounds, wearing a hat, a brown hoody and a green jacket. She was shown a book of photographs, but was unable to make an identification. However, when Bogar returned to the police station the following day to view an array of six photographs, she positively identified a photograph of the defendant as the man who carjacked her vehicle.
>
> At about noon on February 22, 1999, four hours after Bogar's car was hijacked, Ellen Schack returned to her East Orange home from a supermarket. She parked her car on the street, placed her shoulder bag around her neck and took out two bags of groceries. As she was about half way to her door, a burgundy-colored car pulled up and stopped in the middle of the street. A man jumped out of the car, grabbed Schack, shoved her to the ground, took her shoulder bag and ran back to the car. Schack rang her doorbell, and her daughter, Brenda Castell, let her inside. Ms. Castell had already called police since she saw the robbery. When the police arrived, Ms. Castell described the car involved as a burgundy Toyota, and said the robber was wearing a cap and a beige or green coat.

2

A few minutes after the Schack robbery, East Orange Police Officer Hurley Jones heard a police radio transmission that the car used in the robbery had been spotted. Jones responded to the location and saw the car with two occupants. After he turned on the emergency lights and siren on his police car, the Toyota sped away. Jones and other officers gave chase about thirty minutes as the Toyota sped through traffic lights and stop signs, accelerating up to fifty-five miles an hour through residential streets. Finally, the car stopped and two men fled from the vehicle, climbed over a fence and ran toward an apartment building. Officer Jones followed on foot and caught the defendant. The other occupant of the car was also captured and was identified as Sammy Jefferson, Jr.

While police were pursuing the suspect vehicle, Ms. Schack was at the East Orange police headquarters being interviewed by Detective William Bland. During the interview, Bland heard a broadcast over the police radio indicating that officers were in pursuit of a vehicle which fit the description of the car involved in Ms. Schack's robbery. He said that he turned off the radio and had Ms. Schack sit in another part of the room. When Bland heard that two men had been arrested, he radioed that they should be brought to police headquarters. About forty-five minutes had passed since Ms. Schack had been robbed. The suspects were led into a room, one at a time, while Ms. Schack viewed them through a two-way mirror. She was unable to identify Jefferson, but she told police that the defendant was the person who robbed her. Later at trial, Ms. Schack was unable to make an in-court identification of defendant. She also testified that the police told her that they "had the guy and they wanted me to take a look at him for identification." After the State rested, the defendant declined to testify and called no witnesses.

(State v. Snipes, A-5591-00T4 (November 3, 2003), pp. 2-5).

2. Procedural History

Following a jury trial, Petitioner was convicted of first degree carjacking, contrary to N.J.S.A. 2C:15-2, second-degree

robbery, contrary to N.J.S.A. 2C:15-1, and second-degree eluding the police, contrary to N.J.S.A. 2C:29-2b.

On January 23, 2001, Petitioner was sentenced to a term of eighteen years incarceration with a six year period of parole ineligibility for the carjacking conviction; a nine-year consecutive term for the robbery conviction; and a concurrent sentence of nine years for the eluding conviction.

Petitioner thereafter filed an appeal, and on November 3, 2003, Petitioner's conviction and sentence were affirmed by the Superior Court of New Jersey, Appellate Division.  Petitioner thereafter filed a motion for certification with the New Jersey Supreme Court, which was denied on February 3, 2004.

On April 26, 2004, Petitioner filed the instant Habeas Corpus Petition pursuant to 28 U.S.C. § 2254.

### DISCUSSION

**Petitioner's Claims.**

Petitioner does not create a habeas petition but rather, offers the following: "I am not a lawyer, nor a paralegal . . . since I do not know the Issue's in my case, I would like to rely on my Petition of Writ Habeas Corpus, and all Legal Documents, Legal Letters, Tangible Objects, and Oral Arguments Etc. Etc.  In support of my criminal, and civil complaint against County, State, and Local Government Agencies, and against this 'Well Orchestrated Criminal Acts against me.'" For the Court's consideration, Petitioner offers a copy of the Superior Court of

4

New Jersey, Appellate Division's Opinion denying Petitioner's direct appeal, mail receipts and a copy of the New Jersey Supreme Court's denial of certification.  As such, the Court finds that the issues presented to the New Jersey Appellate Court are the issues Petitioner wishes to set forth as arguments for habeas relief, and are as follows:

> GROUND ONE - IT WAS ERROR TO DENY DEFENDANT'S REQUEST FOR A WADE HEARING AND TO ADMIT THE STATE'S EVIDENCE OF HELEN SCHACK'S IDENTIFICATION WHERE THE IDENTIFICATION PROCEDURE AT ISSUE WAS AN IMPERMISSIBLY SUGGESTIVE ONE-MAN SHOW UP AND THE POLICE TOLD THE VICTIM THAT DEFENDANT WAS HER ASSAILANT.  FURTHERMORE, DEFENSE COUNSEL'S FAILURE TO PRESENT EVIDENCE IN SUPPORT OF A WADE HEARING CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

> GROUND TWO - IT WAS IMPROPER FOR THE TRIAL COURT TO CHASTISE DEFENSE COUNSEL IN FRONT OF THE JURY.  THE COURT'S REMARKS HAD THE CLEAR CAPACITY TO CAUSE THE JURY TO BE ANGRY WITH DEFENSE COUNSEL AND VIOLATE DEFENDANT'S RIGHT TO A FAIR TRIAL.

> GROUND THREE - THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION TO REOPEN SUMMATIONS IN VIOLATION OF DEFENDANT'S 5TH, 6TH AND 14TH AMENDMENTS.

> GROUND FOUR - THE SENTENCE IMPOSED IS EXCESSIVE.

See Petition for Writ of Habeas Corpus.

**Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

5

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to

that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999). Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record. See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess

7

the reasonableness of the state court's factual determinations. See id. Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)). "A finding that is well-supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See

8

Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v.
Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United
States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert.
denied, 399 U.S. 912 (1970).

## Petitioner's Ground One - (a) Failure of Trial Court to Conduct a Wade Hearing.

In his direct appeal before the Superior Court of New
Jersey, Appellate Division, Petitioner argued that it was error
for the motion judge to deny a full Wade hearing.  Petitioner
pointed to the method of identification utilized by law
enforcement, specifically the "inherent suggestibility of the
one-man show-up process" and the testimony provided to the grand
jury in which Ms. Schack had responded to a police officer's
question as to whether she was sure of her previous
identification of Petitioner with "I think so."

In consideration of Petitioner's appeal, the New Jersey
Appellate Division found that the "one-man show-up" process was a
widely accepted practice, and that the testimony during grand
jury proceedings of Ms. Schack did not rise to a level necessary
to demonstrate suggestive police procedures.   State v. Snipes, A-
5591-00T4, pp. 7-8 (November 3, 2003).

Show-up identifications allow identifications while the
witness' memory is fresh; further, the suspect has the same
appearance as at the time of the crime, and suspects who are not
positively identified may be released immediately.  See Green v.

9

City of Paterson, 971 F. Supp. 891, 904 (D.N.J. 1997)(citations omitted).  Even if an identification procedure is suggestive, an identification may still be reliable.  See id. (citing Neil v. Biggers, 409 U.S. 188, 199 (1972))(other citation omitted).  An identification becomes unreliable "when that suggestibility in confrontation reaches impermissible or unfair limits."  Id. (citation omitted).

A two-prong test is utilized to determine the trial admissibility of an eyewitness identification.  First, a court must decide whether the procedure in question was, in fact, impermissibly suggestive.  If it is so determined, the court must decide whether the suggestive procedure resulted in a substantial likelihood of misidentification.  See Stovall v. Denno, 388 U.S. 293 (1967); Simmons v. United States, 390 U.S. 377 (1968); Neil v. Biggers, 409 U.S. 188 (1972); Manson v. Braithwaite, 432 U.S. 98 (1977).  Due Process is not violated if "a suggestive and unnecessary identification procedure . . . possesses sufficient aspects of reliability," as reliability is the "linchpin in determining the admissibility of identification testimony."  Id. (citing Manson, 432 U.S. at 106).

In United States v. Mathis, the Court of Appeals for the Third Circuit stated that:

> [The] likelihood of misidentification should be
> measured by a totality of circumstances including:  the
> witness's initial opportunity to view the suspect at
> the crime scene and degree of attention at that time,
> the witness's level of certainty in the disputed

10

identification, the length of time between initial
viewing and disputed identification, and the accuracy
of any intervening description of the suspect occurring
between those two events.

Mathis, 264 F.3d 321, 330 (3d Cir. 2001), cert. denied, 535 U.S.

908 (2002)(citing Biggers, 409 U.S. at 199-200).  New Jersey

adopted the Biggers and Manson standards in State v. Madison, 109

N.J. 223 (1988).

This Court finds that Petitioner has not shown that the

identification of him was unreliable in order to warrant a

constitutional due process violation.  Utilization of the one-man

show-up procedure, while inherently more suggestive than a

multiple person line-up, does not rise to "unfair limits" as to

warrant a Wade hearing.  Further, the identification by Ms.

Schack was reliable as a minimal amount of time had elapsed from

the attack to the identification and the accuracy of the

intervening description between the attack and the

identification.  Thus, the Court finds that under the totality of

the circumstances, the identification of Petitioner was

sufficiently reliable, and that his Due Process rights were not

violated.[1]

Further, Petitioner has not shown, as required by 28 U.S.C.

§ 2254(d), that the actions of the state courts "resulted in a

decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by

---

[1]   Petitioner presented no argument in his direct appeal as
to the out-of-court identification made by Ms. Bogar.

11

the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

## Petitioner's Ground One - (b) Defense Counsel's Failure to Present Evidence in Support of a Wade Hearing Constituted Ineffective Assistance of Counsel.

Petitioner next argued in his state court appeal that he received ineffective assistance of counsel because of the failure of his attorney to determine what Detective Bland told Ms. Schack prior to her identification.  Petitioner pointed to the fact that Ms. Schack was not only unable to make an in-court identification of him at trial, but also testified she was told by the police prior to her earlier identification that she was about to view the man who committed the crime.[2]  Petitioner asserted that his trial attorney was unaware of Ms. Schack's recollection of the events when he moved for a Wade hearing and that his lack of knowledge indicated a failure by his attorney to conduct a reasonable investigation.

The Superior Court of New Jersey, Appellate Division considered this issue in Petitioner's direct appeal and found that the record was barren as to whether Petitioner's trial

___

[2]  However, there was testimony by Detective Bland that Ms. Schack was never told anything about defendant's apprehension and that she made the identification without hesitation.

counsel attempted to interview Ms. Schack or if she declined to be interviewed.   The Appellate Division found that as such, the record did not substantiate Petitioner's claim of ineffective assistance.   State v. Snipes, A-5591-00T4, p. 9 (November 3, 2003).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that in order to establish that trial counsel is ineffective, the petitioner must show that "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment," and "that the deficient performance prejudiced the defense."   Id. at 687.   In order to establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   State v. Fritz , 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at 694).   "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."   Strickland, 466 U.S. at 688.   The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.   A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of

> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time. Because
> of the difficulties inherent in making the evaluation,
> a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also  Virgin Islands v.

Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied 519

U.S. 1020 (1996).

After a thorough review of the state court record, this

Court agrees that Petitioner has not demonstrated that trial

counsel was ineffective under the Strickland standard.  Even had

counsel performed as desired by Petitioner, the jury was required

to make a credibility determination as the trial court had

determined.  Further, there is absolutely no evidence in the

record that counsel had not tried to interview Ms. Schack, or

that if he had, she would have cooperated.  However, there is

evidence from the record that trial counsel did present the court

with Ms. Schack's grand jury testimony.

As such, Petitioner has failed to demonstrate that trial

counsel failed to adequately represent him under the Strickland

standard.  Petitioner's ineffective assistance of counsel claim

shall therefore be denied.

14

**Petitioner's Ground Two - Improper Conduct by Trial Court by Chastising Petitioner's Trial Counsel in Front of Jury.**

Petitioner next argued in his direct appeal that the trial court improperly chastised Petitioner's trial counsel in front of the jury and that those remarks had the clear capacity to cause the jury to be angry with defense counsel, thereby violating Petitioner's right to a fair trial. Petitioner based his assertion on the following, a portion of the trial transcript:

> THE COURT:    You aren't allowing the witness to answer questions, [defense counsel]. And that's going to stop right now. You start asking him a question. He starts answering. You interrupt him in the middle of a word. Now it's time for you to give the witness courtesy as well.
>
> DEFENSE COUNSEL:    Thank you Judge.
>
> THE COURT:    That is a criticism of your tactic.

The New Jersey Appellate Division considered and denied this argument during Petitioner's direct appeal and determined that said argument was without sufficient merit to warrant discussion in a written opinion. State v. Snipes, A-5591-00T4, p. 9 (November 3, 2003).

When considering a trial judge's behavior or manner during a trial in a habeas proceeding, this Court must determine "whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." Duckett v. Godinez, 67 F.3d 734, 739 (9th Cir. 1995). Further, the appellate court's finding of

15

an absence of bias is entitled to a presumption of correctness. See 28 U.S.C. § 2254(d).

This Court concurs with the New Jersey Appellate Division. The trial court simply instructed Petitioner's counsel to allow the witness to fully answer the question previously asked before posing another question. That instruction most certainly does not rise to a level sufficient to show a violation of federal due process.

Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." This ground for a writ of habeas corpus, is therefore denied.

**Petitioner's Ground Three - Trial Court Erred in Not Granting Petitioner's Motion to Re-open Summations so That Defense Counsel Could Tell the Jury that Petitioner, When Arrested, was Wearing Clothing Other Than What the Witnesses to the Carjacking and Robbery Described.**

Petitioner's next ground for habeas relief states that the trial court committed constitutional error in violation of his 5th, 6th and 14th Amendment rights by failing to allow summations to be re-opened so that defense counsel could inform the jury that the clothes Petitioner was wearing at the time of the arrest

16

was different than the clothing the witnesses reported the attacker wearing during the carjacking and robbery.

The trial court, in considering defense counsel's motion to reopen summations, determined that defense counsel's omission regarding the clothing was not so prejudicial as to warrant the reopening of summations. The trial court noted that there was testimony that Petitioner and the co-defendant often switched clothing minutes after committing crimes in order to thwart later identifications. The trial court also noted the rules regarding order of summations, and that there was no rule which permitted a defense attorney to reopen a summation in order to mention something that he had previously forgotten. The trial court decided to reserve its ruling so that counsel could research whether such reopening of summations was permissible under the law.

The next day, defense counsel argued to the trial court that New Jersey Rule 1:1-2 gives a trial court the discretion to relax certain court rules. The trial court rejected the argument because defense counsel was suggesting that the rule provided unfettered discretion by trial judges, and without an appellate ruling explicitly permitting such rule deviance, the trial court had no guideline to follow. The trial court ultimately found that Petitioner would not suffer significant prejudice to justify the relaxation of the rules of summation.

17

The New Jersey Appellate Division considered and denied Petitioner's argument regarding the reopening of summations during Petitioner's direct appeal, stating that said argument was without sufficient merit to warrant discussion in a written opinion.   State v. Snipes, A-5591-00T4, p. 9 (November 3, 2003).

This Court finds that Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

## Petitioner's Ground Four - The Sentencing Court Erred When it Imposed Consecutive Sentences for Carjacking and Second-Degree Robbery.

Petitioner's final ground for relief argues that the sentencing court committed error when it imposed consecutive sentences for carjacking and second-degree robbery. Specifically, Petitioner asserts that the carjacking and robbery were one period of aberrant behavior, and accordingly, do not meet the test for imposing consecutive sentences under New Jersey law.

Again, the New Jersey Appellate Court contemplated and rejected this same issue in Petitioner's direct appeal.  It held that "the imposition of consecutive terms for separate crimes of

carjacking and robbery totaling twenty-seven years does not shock our conscience." (citing State v. Ghertler, 114 N.J. 383, 393 (1989); State v. Roth, 95 N.J. 334, 363-64 (1984).

A federal habeas motion is not the vehicle with which to allege a violation of state law by a trial court. See Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974) (holding that absent constitutional error, a federal court has no supervisory authority to act or review the actions of state court); see also Cupp v. Naughten, 414 U.S. 141, 146 (1973)(finding that a petitioner' habeas that establishes undesirable actions by a state court is not properly brought before federal court unless said actions violated "some right which was guaranteed to the defendant by the Fourteenth Amendment"); Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988)("errors in the application of state law . . . are usually not to be questioned in a federal habeas proceeding").

To invoke federal habeas relief regarding a state court sentencing, Petitioner must show that the sentencing court's application of state law was arbitrary and capricious as to constitute a due process or 8th Amendment violation. Richmond v. Lewis, 506 U.S. 40, 50 (1992); Jackson v. Beyer, 750 F.Supp. 153, 156-57 (D.N.J. 1990).

Here, Petitioner fails to demonstrated such a violation. At sentencing, the court sentenced Petitioner to an eighteen-year period of incarceration for carjacking with a six-year period of

19

parole ineligibility. The court also sentenced Petitioner to a consecutive nine-year period of incarceration on the robbery conviction. Finally, the court sentenced Petitioner to a nine-year period of incarceration for eluding, to run concurrently with the carjacking conviction.

Petitioner offers no argument as to why he believes the sentencing court erred. There is nothing in the record to suggest that the sentence imposed violated the state sentencing guidelines. Petitioner fails to present evidence of any kind that demonstrates that the sentencing court's decision to impose consecutive terms for carjacking and second-degree robbery was arbitrary and capricious in violation of his constitutional rights.

As such, Petitioner's final ground for relief shall be denied.

20

**CONCLUSION**

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.


_____
S/WILLIAM H. WALLS
United States District Judge

Dated:

21